Sheehan & Associates, P.C.

| United States District Court<br>Eastern District of New York | 1:20-cv-04245 |
|---|---|
| Santina LaRocca, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    - against -<br><br>Frito-Lay, Inc.,<br><br>        Defendant | Complaint |

Plaintiff by attorneys allege upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1. Frito-Lay, Inc. ("defendant") manufactures, distributes, markets, labels and sells potato crisps under its "Ruffles" brand ("Product") labeled as "Cheddar & Sour Cream."

2. The Product is available to consumers from retail and online stores of third-parties and is sold in various sizes.

3. The relevant front label representations include "Cheddar & Sour Cream," "Flavored," "Baked," "65% Less Fat Than Regular Potato Chips," a wedge of cheddar cheese, a bowl of sour cream and an orange and white color pattern reflective of the colors associated with cheddar cheese and sour cream.



4. According to reports, "Food companies are dropping artificial flavors, coloring, preservatives and other additives with scary names and focusing more on natural, wholesome and fresh ingredients."[1]

5. Consumers are seeking products which obtain their flavor from their characterizing food ingredients, i.e., strawberry shortcake with strawberries or natural strawberry flavor from strawberries as opposed to strawberry flavor synthesized from cherries.[2]

---

[1] Jeff Daniels, Why your favorite foods may be getting new recipes, CNBC, September 19, 2016
[2] David Andrews, Synthetic ingredients in Natural Flavors and Natural Flavors in Artificial flavors, Environmental Working Group (EWG).

2

6. Nielsen has reported that 62% of consumers say they try to avoid artificial flavors.[3]

7. New Hope Network concluded that "71% of consumers today are avoiding artificial flavors."[4]

8. Label Insight determined that 76% of consumers avoid artificial flavors.[5]

9. This preference for avoiding artificial flavors applies to dairy products and foods that contain dairy products or dairy flavors, because consumers expect dairy products and flavors to contain minimal ingredients and be free from synthetic ingredients and harsh processing due to their association with cows and milk.

10. Sour cream is a cultured dairy product used as a condiment and as an ingredient in various foods, such as sauces and baking.

11. Sour cream "results from the souring, by lactic acid producing bacteria, of pasteurized cream."

12. The lactic acid bacteria in sour cream produces its "primary desirable aroma compound…diacetyl (2,3 di-butanone)."[6]

13. Diacetyl is known as the main flavor compound in butter and is used in its synthetic form as an artificial flavor in food.[7]

14. The flavor of sour cream relies on a balance between "proper culture selection, close control of the lactic acid development, along with the proper composition of the cream."[8]

15. The lactic acid bacteria which "produce diacetyl are often described as citrate

---

[3] Nielsen, Reaching For Real Ingredients: Avoiding The Artificial, Sept. 6, 2016.
[4] Alex Smolokoff, Natural color and flavor trends in food and beverage, Natural Products Insider, Oct. 11, 2019.
[5] Thea Bourianne, Exploring today's top ingredient trends and how they fit into our health-conscious world, March 26-28, 2018.
[6] M.J. Costello, Sour Cream and Related Products, p. 406 in Bodyfelt (ed.) The Sensory Evaluation of Dairy Products, Springer (2008).
[7] Artificial Butter Flavorings (ABF) Components, National Toxicology Program.
[8] Id.

3

fermenters, or in shorthand, cit+."[9]

16. This "buttery note in sour cream derives from diacetyl production via citrate metabolism by citrate fermenting (cit+) lactic acid bacteria."

17. Numerous scholars and evaluators of dairy products recognize that the "characteristic flavor of a quality sour cream should include a subtle to moderate acid note *and a buttery (diacetyl) aroma.*"[10] *See* M.J. Costello, Sour Cream and Related Products, M. Bodyfelt (ed.), *The Sensory Evaluation of Dairy Products*, Springer (2008) (emphasis added).

18. According to Costello, "The primary desirable aroma compound in sour cream (and likewise cultured buttermilk) is diacetyl (2,3 di-butanone)."[11]

19. Sour cream which lacks this butter flavor is described by most consumers as "flat" and "lack[ing] cultured flavor" by professional dairy flavor evaluators.[12]

20. In the chapter entitled "Sour Cream and Crème Fraîche" in the Handbook of Animal-Based Fermented Food and Beverage Technology, sour cream is described as having a "balanced, pleasant, buttery-like (diacetyl) aroma."[13]

21. In the Encyclopedia of Food Microbiology's chapter of Fermented Milks, the author states that diacetyl is recognized "as the major flavor compound" in sour cream.[14]

22. According to a consumer survey, a "sour cream that would appeal to most consumers is characterized by moderate to high levels of diacetyl." L. Shepard, et al. "*Relating sensory and chemical properties of sour cream to consumer acceptance*," Journal of Dairy Science, 96.9

---

[9] *Id*.
[10] Costello at 406 (emphasis added).
[11] *Id.*
[12] *Id.*
[13] 17.Lisbeth Meunier-Goddik, Sour Cream and Crème Fraîche in Yiu H. Hui (ed.), Handbook of Animal-Based Fermented Food and Beverage Technology Vol. 2. CRC Press (2012).
[14] J.A. Narvhus, Fermented Milks in Richard K. Robinson (ed.), Encyclopedia of food microbiology, Academic Press, (2014).

4

(2013): 5435-5454.

23. To produce sour cream with high levels of diacetyl requires adequate citrate in the cream prior to fermentation, which is based upon the diet of the cows.

24. In other words, cows which can graze freely on pasture – instead of in feedlots – will provide the base for a sour cream which is naturally higher in diacetyl.

25. However, pasture raised cows are more costly because they require more space per cow and have longer life spans that cows who lack this benefit.

26. To produce sour cream with its essential diacetyl flavor from cows who are not provided a pasture diet requires the addition of artificial diacetyl flavor.

27. Defendant's Product makes direct representations with respect to one of its "primary recognizable flavor(s)," sour cream, through the dollop of sour cream and the word "Sour, the block of cheddar cheese, the word "Sour Cream" and the white background of half the front label, contrasted with the orange of the bottom half of the label, corresponding to the orange-colored cheddar cheese. *See* 21 C.F.R. § 101.22(i).

28. Sour cream is the Product's "characterizing flavor." *See* 21 C.F.R. § 101.22(i).

29. Consumers are misled by the Product's representation as "Flavored" because this gives them the impression that actual sour cream is the source of the flavor.

30. Natural sour cream flavor is "the essential oil, oleoresin, essence or extractive, protein hydrolysate, distillate, or any product of roasting, heating or enzymolysis, which contains the flavoring constituents derived from…dairy products, or fermentation products thereof, whose significant function in food is flavoring rather than nutritional." *See* 21 C.F.R. § 101.22(a)(3).

31. However, the Product's sour cream flavor is provided by artificial flavor, in the form of synthetic diacetyl.

5

32. The artificial diacetyl is present in significant amounts such that it could not be the result of butter or butter flavor. *See* M. W. Rigler et al., *Emission of Diacetyl (2,3 butanedione) from Natural Butter, Microwave Popcorn Butter Flavor Powder, Paste, and Liquid Products*, International Journal of Occupational and Environmental Health, (2010) 16(3), p. 301.

33. Natural butter is commonly recognized to contain "up to 7500 times less diacetyl" than artificial diacetyl.[15]

34. The Product's back label ingredient list shows the Product contains "Artificial Flavors."

> INGREDIENTS: DRIED POTATOES, CORN STARCH, CORN OIL, SUGAR, MALTODEXTRIN (MADE FROM CORN), SALT, SOY LECITHIN, DEXTROSE, WHEY, WHEY PROTEIN CONCENTRATE, ONION POWDER, CHEDDAR CHEESE (MILK, CHEESE CULTURES, SALT, ENZYMES), MONOSODIUM GLUTAMATE, BLUE CHEESE (MILK, CHEESE CULTURES, SALT, ENZYMES), CITRIC ACID, ARTIFICIAL COLOR (YELLOW 6 LAKE, YELLOW 5 LAKE, YELLOW 5, YELLOW 6), SKIM MILK, NATURAL AND ARTIFICIAL FLAVORS, GARLIC POWDER, LACTIC ACID, DISODIUM INOSINATE, AND DISODIUM GUANYLATE.

**INGREDIENTS:** DRIED POTATOES, CORN STARCH, CORN OIL, SUGAR, MALTODEXTRIN (MADE FROM CORN), SALT, SOY LECITHIN, DEXTROSE, WHEY, WHEY PROTEIN CONCENTRATE, CHEDDAR CHEESE (MILK, CHEESE CULTURE, SALT, ENZYMES), MONOSODIUM GLUTAMATE, ONION POWDER, BLUE CHEESE (MILK, CHEESE CULTURES, SALT, ENZYMES), CITRIC ACID, ARTIFICIAL COLOR (INCLUDING YELLOW 6 LAKE, YELLOW 5 LAKE, YELLOW 5, YELLOW 6), SKIM MILK, NATURAL AND ARTIFICIAL FLAVORS, GARLIC POWDER, LACTIC ACID, DISODIUM INOSINATE, AND DISODIUM GUANYLATE.

---

[15] M. W. Rigler et al., *Emission of Diacetyl (2,3 butanedione) from Natural Butter, Microwave Popcorn Butter Flavor Powder, Paste, and Liquid Products*, International Journal of Occupational and Environmental Health (2010) 16(3).

35. Because the Product has artificial diacetyl, which is the main flavor compound in sour cream, the front label is deceptive and misleading because it fails to disclose the presence of this artificial flavor.

36. Federal regulations, mirrored by those of New York State, require that consumers be informed whenever a food "contains any artificial flavor which simulates, resembles or reinforces the characterizing flavor." 21 C.F.R. § 101.22(i)(2).

37. Artificial diacetyl flavor simulates, resembles and reinforces the characterizing flavor of sour cream, and is required to be disclosed on the front label, i.e., "Cheddar and 'Artificial Sour Cream Flavored'" or in a similar way. 21 C.F.R. § 101.22(i)(2) ("the name of the characterizing flavor shall be accompanied by the word(s) 'artificial' or 'artificially flavored', in letters not less than one-half the height of the letters in the name of the characterizing flavor, e.g., 'artificial vanilla', 'artificially flavored strawberry', or 'grape artificially flavored'.").

38. Reasonable consumers do not expect a product which only uses the term "flavored" to contain artificial flavors, because they would expect the company to tell the whole truth, instead of a half-truth.

39. Reasonable consumers are not capable of determining that the Product's artificial diacetyl flavor affects its characterizing flavor of sour cream.

40. Consumers are forced to rely upon the full disclosure of companies who use artificial flavor, because the presence of artificial flavor which affects a food's characterizing flavor has a material bearing on price and consumer acceptance of a food.

41. Other brands of cheddar and sour cream ridged potato chips contain cheddar and sour cream flavoring with artificial flavor and identify their products as "Artificially Flavored" because the artificial flavor affects the characterizing flavor, on their front label.

42. These competitor products have the same flavor composition as the Product here, but do not hide their artificial flavor on the ingredient list.

43. Defendant knows consumers will pay more for the Product because the label does not state "artificially flavored sour cream" or "artificial flavor."

44. Defendant's branding and packaging of the Product is designed to – and does – deceive, mislead, and defraud plaintiff and consumers.

45. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers like plaintiff.

46. The value of the Product that plaintiff purchased and consumed was materially less than its value as represented by defendant.

47. Had plaintiff and class members known the truth, they would not have bought the Product or would have paid less for them.

48. As a result of the false and misleading labeling, the Product is an sold at a premium price, approximately no less than $2.98 for an 6.25 OZ bag, excluding tax, compared to other similar products represented in a non-misleading way, and higher than the price of the Product if it were represented in a non-misleading way.

## Jurisdiction and Venue

49. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2)

50. Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

51. Plaintiff Santina LaRocca is a citizen of New York.

52. Defendant Frito-Lay, Inc., is a Delaware corporation with a principal place of business in Plano, Collin County, Texas and is a citizen of Texas.

53. "Minimal diversity" exists because plaintiff Santina LaRocca and defendant are citizens of different states.

54. Upon information and belief, sales of the Product in New York exceed $5 million per year, exclusive of interest and costs.

55. Venue is proper in this judicial district because a substantial part of the events or omissions giving rise to the claim occurred in this District, *viz*, the decision of plaintiff to purchase the Product and the misleading representations and/or their recognition as such.

56. This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

## Parties

57. Plaintiff Santina LaRocca is a citizen of Brooklyn, Kings County, New York.

58. Defendant Frito-Lay, Inc. is a Delaware corporation with a principal place of business in Plano, Texas, Collin County and is a citizen of Texas.

59. During the relevant statutes of limitations, plaintiff purchased the Product within his district and/or State for personal and household consumption and/or use in reliance on the representations of the Product.

60. Plaintiff Santina LaRocca purchased the Product on one or more occasions, during the relevant period, at corner stores, convenience stores and supermarkets during 2018 and 2019.

61. Plaintiff purchased the Product on occasions including but not necessarily limited to on or around May 26, 2020, at stores including BJ's Wholesale Club, 339 Gateway Dr, Brooklyn, NY 11239.

62. Plaintiff bought the Product at or exceeding the above-referenced prices because he liked the product for its intended use and expected it to not contain artificial flavors and artificial flavors which affected the flavors identified by the front label, *viz*, sour cream.

63. Plaintiff was deceived by and relied upon the Product's deceptive labeling.

64. Plaintiff would not have purchased the Product in the absence of Defendant's misrepresentations and omissions.

65. The Product was worth less than what Plaintiff paid for it and he would not have paid as much absent Defendant's false and misleading statements and omissions.

66. Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance that Product's labels are consistent with the Product's components.

## Class Allegations

67. The class will consist of all purchasers of the Product who reside in New York during the applicable statutes of limitations.

68. Plaintiff seek class-wide injunctive relief based on Rule 23(b) in addition to a monetary relief class.

69. Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

70. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

71. Plaintiff is an adequate representatives because his interests do not conflict with other members.

72. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

73. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

74. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

75. Plaintiff seeks class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL"), §§ 349 & 350
(Consumer Protection Statutes)

76. Plaintiff incorporates by reference all preceding paragraphs.

77. Plaintiff and class members desired to purchase and consume products which were as described and marketed by defendant and expected by reasonable consumers, given the product type.

78. Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

79. Defendant misrepresented the substantive, quality, compositional and/or environmental attributes of the Product.

80. Plaintiff relied on the statements, omissions and representations of defendant, and defendant knew or should have known the falsity of same.

81. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

82. Plaintiff incorporates by reference all preceding paragraphs.

83. Defendant misrepresented the substantive, quality, compositional and/or environmental attributes of the Product.

84. Defendant had a duty to disclose and/or provide non-deceptive marketing of the

Product and knew or should have known same were false or misleading.

85. This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product type.

86. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a well-known and respected brand or entity in this sector.

87. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Product.

88. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Breaches of Express Warranty, Implied Warranty of Merchantability and<br>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.</u>

89. Plaintiff incorporates by reference all preceding paragraphs.

90. The Product was manufactured, labeled and sold by defendant or at its express directions and instructions, and warranted to plaintiff and class members that they possessed substantive, quality, compositional and/or environmental which they did not.

91. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

92. This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

93. Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

94. Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years regarding

12

the Product, of the type described here.

95. The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable.

96. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Fraud

97. Plaintiff incorporates by reference all preceding paragraphs.

98. Defendant misrepresented the substantive, quality, compositional and/or environmental attributes of the Product.

99. Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label and ingredient list, when it knew its statements were neither true nor accurate and misled consumers.

100. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Unjust Enrichment

101. Plaintiff incorporates by reference all preceding paragraphs.

102. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

### Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

  1. Declaring this a proper class action, certifying plaintiff as representative and the

undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   September 11, 2020

                                            Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 303-0552
Fax: (516) 234-7800
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

1:20-cv-04245
United States District Court
Eastern District of New York

Santina LaRocca, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

Frito-Lay, Inc.,

Defendant

Complaint

```
Sheehan & Associates, P.C.
 60 Cuttermill Rd Ste 409
 Great Neck NY 11021-3104
    Tel: (516) 303-0552
    Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  September 11, 2020

/s/ Spencer Sheehan<br>Spencer Sheehan